Bradford C. McKINNEY,
Petitioner–Appellee,

v.

W.L. KAUTZKY, Executive Director Colorado Department of Corrections, and Wallis Gunnels, Superintendent Rifle Correctional Center, Rifle, Colorado, Respondents–Appellants.

No. 89SA434.

Supreme Court of Colorado,
En Banc.

Oct. 22, 1990.

Petitioner-appellee not appearing.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard B. Forman, Sol. Gen., Barbara L. Widick, First Asst. Atty. Gen., Denver, for respondents-appellants.

Justice ERICKSON delivered the Opinion of the Court.

The Colorado Department of Corrections (Department)[1] appeals from the district court's order granting a writ of habeas corpus.[2] We reverse the district court and remand with directions to discharge the writ of habeas corpus as premature.

I

Bradford C. McKinney, the appellee in this case, was convicted of aggravated robbery[3] and received a sentence of four years on April 1, 1988. McKinney's earliest parole date was January 23, 1990, but no parole date was assigned by the parole board at the time this appeal was filed. McKinney filed a petition for a writ of habeas corpus and a writ was issued on September 28, 1989. He alleged that he was entitled to be referred to a community

---

1. Appellants Kautzky and Gunnels bring this appeal in their capacity as Director and Superintendent of the Department of Corrections.

2. This court has jurisdiction of appeals from grants of writs of habeas corpus. *See* § 13–4–102(1)(e), 6A C.R.S. (1987).

3. § 18–4–302(1)(b), (c) and (3), 8B C.R.S. (1986 & 1989 Supp.).

correctional facility. On October 3, 1989, the district court entered judgment for McKinney and ordered the Department to refer McKinney to a community correctional facility within a reasonable time after a parole eligibility date was established by the parole board.

## II

Section 17–27–106(4)(a), 8A C.R.S. (1986 & 1989 Supp.), provides that:

(I) the executive director shall refer an offender to such community correctional facility or program as provided in subparagraph (II) of this paragraph....

(II)(A) An offender who has not been convicted of an offense enumerated in section 16–11–309(2), C.R.S., and who has displayed acceptable institutional behavior shall be referred to a community correctional facility or program for placement up to sixteen months immediately prior to such offender's parole eligibility date.

(B) Any other offender shall be referred to a community correctional facility or program for a placement of up to one hundred eighty days immediately prior to such offender's parole eligibility date.

There are two issues presented in this case. The first is whether the Department can classify an inmate under part (B) if that inmate was not sentenced under section 16–11–309, the violent offender statute, but was convicted of a crime enumerated in that statute. The second question is whether, once an inmate falls within the ambit of either section 17–27–106(4)(a)(II)(A) or (B), the Department must refer that inmate to a community corrections program or whether the Department has discretion not to refer the inmate.

## A

The district court found that McKinney could not be classified under section 17–27–106(4)(a)(II)(B) since his sentence was not enhanced under the violent offender statute.[4] The district court held that "the reference to CRS 16–11–309(2) cannot be considered a definitional reference because in order to meet the criteria set out for a 'crime of violence,' there must be guilt as to an enumerated offense *and* further findings concerning the type of victim or use of a weapon." We find nothing in section 17–27–106 to indicate that sentencing under section 16–11–309(2) is a prerequisite to a finding that an offender falls under part (B) of that section.

When interpreting a statute, we search for the legislative intent, looking first to the language of the statute. If the language in the statute is clear and the intent of the General Assembly may be discerned with reasonable certainty, it is not necessary to resort to other rules of statutory interpretation. *People v. District Court,* 713 P.2d 918 (Colo.1986). Here we need look no further than the plain meaning of the statutory words. Section 17–27–106(4)(a)(II)(A) refers to an offender that has not been convicted of an offense *"enumerated"* in section 16–11–309(2). Under section 16–11–309(2), a "crime of violence" is defined as:

a crime in which the defendant used, or possessed and threatened the use of, a deadly weapon during the commission or attempted commission of any crime committed against an elderly or handicapped person or a crime of murder, first or second degree assault, *robbery,*[5] first degree arson, first or second degree burglary, escape, or criminal extortion, or during the immediate flight therefrom, or the defendant caused serious bodily injury or death to any person, ... during the commission or attempted commission of any such felony or during the immediate flight therefrom.

As long as a prisoner did not receive an enhanced sentence for a conviction of a crime of violence pursuant to section 16–

---

**4.** § 16–11–309(2)(a)(I), 8A C.R.S. (1986 & 1989 Supp.).

**5.** (Emphasis added.) "Robbery" includes both simple robbery (section 18–4–301, 8B C.R.S.

(1986)), and aggravated robbery (section 18–4–302, 8B C.R.S. (1986 & 1989 Supp.)). *People v. Eggers,* 196 Colo. 349, 585 P.2d 284 (1978).

11–309(1)(a), he is defined as an "offender" and becomes eligible at some point for referral to community corrections. § 17–27–102(4). At what point he becomes eligible depends on whether he was convicted of a crime enumerated in section 16–11–309. If so, under part (B) the prisoner is eligible for referral up to 180 days before his parole eligibility date. If not, he falls under part (A) and is eligible up to sixteen months prior to his parole eligibility date. The district court held that only those defendants that received an enhanced sentence under section 16–11–309 could be classified under part (B). The Department asserts, however, that the plain meaning of section 17–27–106 requires it to classify any inmate that was convicted of any of the crimes enumerated in section 16–11–309 under part (B), regardless of whether that inmate received an enhanced sentence. That argument is well-taken.

The plain and ordinary meaning of "enumerated," as set out in section 17–27–106, is definitional. No requirement, other than that the crime for which the inmate was convicted be among those listed in section 16–11–309(2), can be read into section 17–27–106(II)(A) or (B), which determines at what point he becomes eligible for referral to community corrections. We hold that so long as an inmate is convicted of any of the enumerated crimes in section 16–11–309(2), he must be classified under section 17–27–106(II)(B).

### B

■ The second question is whether, once an inmate falls within the ambit of either section 17–27–106(4)(a)(II)(A) or (B), the Department must refer that inmate to a community corrections program or whether the Department has discretion not to refer the inmate. The district court issued a writ compelling the Department to

refer McKinney once a parole eligibility date was set.

The statutory language in section 17–27–106 was amended in 1987 by Senate Bill 161 to change the words "the executive director *may* transfer any offender" to "the executive director *shall* transfer any offender." (Emphasis added.) At the House Committee on Judiciary meeting, March 31, 1987, Larry Linke of the Division of Criminal Justice testified that the purpose of that change was to ensure that eligible offenders would be referred, and that the "shall" language was needed because the Department had not been referring inmates.

The intent of the General Assembly was to shift the discretion from the Department to the community corrections facilities and the local community corrections boards. Under section 17–27–106, either the local board or the service provider itself can reject the referral if it believes that the inmate is not appropriate for community corrections.[6] The Department is under an obligation only to refer that inmate once he or she falls within the provisions of either section 17–27–106(4)(a)(II)(A) or (B). To comply with section 17–27–106, the Department is required to make the referral under the plain language of the statute, and has no discretion. *People v. District Court*, 713 P.2d at 921. "Our primary task in construing a statute is to ascertain and give effect to the intent of the General Assembly." *Id.* Here, that intent can be discerned by the comments in the committee meeting and the plain language of the statute.

### C

■ For purposes of determining whether an inmate falls within the provisions of section 17–27–106(4)(a)(II)(A) or (B), the inmate must be classified under part (B) by the Department of Corrections if he or she

**6.** Section 17–27–106(4)(a)(I) provides:
Pursuant to a state contract with a unit of local government or nongovernmental agency operating a community correctional facility or program, the executive director shall refer an offender to such community correctional facility or program as provided in subpara-

graph (II) of this paragraph (a) *if the unit of local government and the nongovernmental agency consent.*
(Emphasis added.) The Department is also required to notify local law enforcement agencies. § 17–27–106(4)(c), 8A C.R.S. (1986).

was convicted of a crime enumerated under section 16–11–309. A further showing that the inmate was also sentenced under that statute is not required. Once the inmate meets the requirements of either part (II)(A) or (B), however, the Department must refer that inmate to a community correctional facility as provided by section 17–27–106. It is up to the local community's board and facility to decide whether or not to place the inmate at that facility.

In the absence of establishment of a parole eligibility date, however, it cannot be determined whether McKinney is presently entitled to referral and, if he is not, there is nothing to suggest that the director will not refer him to a community correctional facility when he becomes eligible.[7]

The judgment of the district court is reversed and the case is remanded with directions to discharge the writ of habeas corpus as premature.

VOLLACK, J., does not participate.

---

7. The statutes also suggest, by use of the phrase "up to" preceding the designation of the times for placement, that the director has discretion as to when the referrals are to be made within the statutory periods. *See* § 17–27–106(4)(a)(II)(A), (B). Whether this construction of the statute is correct, and if so the scope and criteria for exercise of such discretion, are issues that should not be addressed absent facts clearly presenting them for decision.